The first cases, as you know, we've decided to combine them because of the overlapping issues. It's 2010-1075 Harari v. Lee and 2010-1076 Harari v. MINEA. Mr. Birdwell, there you are. Now, we haven't curtailed the time, but you're free to not use all of it if that's the way things go. Good morning. May it please the Court. I think it's fair to say that the issues have been thoroughly briefed in this case, and so I would like to take my time to point out certain aspects which I think will help to put perspective on the arguments that have been made in the briefs. And the first is this. The overriding question is not whether the 579 application was properly identified and incorporated into the application 566 or the application 398 application at issue, but to what extent it was incorporated into the 398 application by reference. So what I'd like to point out is if you take the context of the 398 application, which is really a copy of the parent priority 566 application, and the 579 application, which was incorporated by reference into the 566 application, and the 175 application, which was incorporated by reference both into the 579 and into the 566 application at the same time on the date that the 566 application was filed, these represent an entire system. And the 175 application, which was ultimately issued as a patent, that application describes the basic device, the basic multilevel semiconductor device. The 579 application then takes that device and puts a circuit around it and discloses many aspects that make that circuit work optimally. And then the 566 application describes a memory system, which incorporates the 579 application and the 175. As I recall on this point, though, on the point of incorporation, one of the arguments, at least, that the other side makes is the different language used in different portions and the fact that in one portion they say relevant portions and in others they just talk broadly about the disclosures. And if we were construing a statute, it seems that suggests some sort of confusion or ambiguity. Well, if you look at the order in which that occurred, the first incorporation by reference unqualifiedly, in a single sentence, said that the disclosures of the two applications, namely the 175 and the 579 —the 579 serial number wasn't known at the time— said the disclosures of the two applications are hereby incorporated by reference. That's an unqualified, unquestioned, single statement. So why would you need the second statement? Well, I don't know why the drafter chose to be a little cautious and say something, again, in the context of writing about the optimized write implementations. But there's no rule that says you can't have redundancy in the specification of a patent application. We're not talking about claims. We're not talking about contract law. We're not talking about statutory interpretation. We're talking about the specification of a patent application. What I don't understand is if the first statement incorporated the entire thing, why would you have a second statement that says yes and also incorporate only this part? Well, it wasn't necessary. It simply wasn't necessary because it was all incorporated by reference. And if you're assuming that a human being is drafting something like this it's always going to be perfectly non-redundant. I think that's not really the reality. Well, this is not a matter of redundancy. It's that the second statement seems to suggest that the first statement is clearly not as broad as you would like us to have the first statement be interpreted. The second statement further elucidates the meaning of the first statement. Well, I don't agree with that. I think that the first statement stands by itself and I think that's what the Ultradent case stands for and all the other case law involved here as well. Ultradent didn't have a second statement that limited what was incorporated by reference. Ultradent, you may be right. If the first statement were the only statement in the patent perhaps that would suggest a broad swath of incorporation by reference. But given the second statement, I think that we have to look at the entire document to appreciate what's incorporated by reference. Wouldn't that suggest that that first statement in this case shouldn't be construed quite so broad? No, I don't think so. If you flip it on the other side, why should the fact that they made a narrow and redundant incorporation statement say that the first one was narrow? You could ask, why did they put in a broad statement to begin with? And it was the first one in there. So the answer is they put in a broad statement because that's what they intended. Suppose I said, I'm going to invite all my friends over for dinner. And that's all I said. And then all of a sudden I probably shouldn't be surprised when a very large number of people show up at my doorstep. But suppose instead I said I'm going to invite all my friends over for dinner and then later on I clarify. So the people who should come for dinner are Mr. Birdwell, Ms. Woodworth, my law clerks, and then I stop. That sort of suggests that the first statement was not actually meant to be as broad as it would have been standing alone. No, I don't think that's a proper analogy. I'm going to invite all my friends over for dinner and that's what I'm going to do. And then later on you think, well, I want to make sure I invite Joan and John and Jane because there's something I want to talk to them about particularly at that time. So I don't want to forget to do them and make sure because the discussion I want to have them is relevant to some things I'm thinking about at that time. So I don't think you can draw that kind of analogy. Assuming that it's not completely incorporated by reference if it were not, does that matter? In other words, if you assume that the reference to optimized erase was meant to be some kind of limitation, does that limitation affect the analysis? No, I don't. Well, it doesn't really matter although the board found that it did. Basically, the board found that something called optimized erase and optimized write limitations was incorporated by reference even if the entire 579 wasn't incorporated by reference. But then what the board did is it tried to divine what the meaning of optimized erase and optimized write was. And it chose basically to take out the entire optimized part of optimized write and optimized erase. If you consider the relationship and I think this is very important to consider the relationship of these three patents or patent applications, the 566 I'm just going to refer to the 566 because it was the priority application the 566 and the 579. So, in the 579 it talks about accurate reading and writing. Those are the actual EEPROM read and write circuits that are going to be used in the 566 system. So, as I understand your argument is that the board erred in two ways at that point. One is that it should have found it to be incorporated in its entirety but even if it didn't optimized erase necessarily includes the reading functions? Optimized erase and optimized write necessarily include all of the aspects of the 579 application. If you look in the record at volume 2 of Harari v. Lee page 630 is the beginning of the 579 application and on the very second page there it starts going through a list of eight aspects of the invention. First it says on page 630 this present invention includes improvements in EEPROM array read and write circuits that allow accurate reading and writing of these memory cells and then it goes on and talks about the aspects the use of master reference cells the use of local reference cells the use of master rewritten to the local in each cycle rewriting the threshold level from the master cells to the local cells in each cycle chunk programming and verify reprogramming at the end of erase offsetting in erase verify bias it doesn't use those words but that's what we're saying this refers to when it's using the erase program margining and then it also has in there repetitive erase and verify and repetitive write and verify so what the board found was the only thing in these eight different aspects that allow accurate reading and writing the only thing that was incorporated by reference was repetitive erase and repetitive verify excuse me I'm going too fast repetitive erase verify and repetitive write verify well that doesn't make any sense no reasonable posa looking at that incorporation by reference the first broad incorporation by reference in the context of not only the 566 application but also the target 579 and the 175 would think that the only thing that the drafter intended to incorporate by reference were these mechanical repetitive erase and verify did you offer a declaration to that effect pardon? did you offer a declaration to the effect that what a reasonable skill in the art would understand that optimized erase includes the reading programming and verifying in fact we did, we offered expert testimony through a declaration but not in this motion in fact this whole issue of going from the issue was whether the 579 was incorporated by reference the board itself the board on its own came up with this decision in this motion that the only thing that was incorporated by reference if anything was the optimized erase and optimized write that argument was not made by the other side in this motion that was decided and is on appeal right now we had no opportunity in the context of this motion even to deal with that issue when we were before the board but it was brought up in another motion and in that other motion there was a declaration by our expert John Reed that a person of ordinary skill in the art looking at this incorporation by reference statement would consider all of the material that's required for support of the claims that are issued here to have been incorporated by reference the board made no comment on that at all and if everything is incorporated by reference the board's decision was that you're fine if everything was incorporated by reference the board's decision in Lee makes Harari the prevailing party in Minya it would make Harari the prevailing party as to everything except the claims related to offsetting the erase verified bias let's start stick with Lee however as I understand it the board also has a claim construction that's part of what is at issue in this appeal and what I want to direct your attention to is the 8 bit line discussion because I think that the board's conclusion as I understand it that everything is supported is premised on its construction of a bit line and if that construction is wrong then we have to reevaluate whether everything is in fact supported so why don't you explain to me take a few minutes and tell the panel why you think the board's construction of a bit line is correct well I think we've talked about the law in the briefs and cited the case law that this court has decided that A in context like this unless there's something specifically that limits it in the claim that A is to be construed as one or more so that's brief but I think an important point on this is let's see when you say something that specifically limits it clearly we have to give this its broadest reasonable construction but are you saying that there's no place in the specification that talks about a single digit line or a single bit line I know they go back and forth in the use of the language well in the Harari specification yes I agree and that's what I was about to point out because if you look at the Lee patent you will find that they actually that it actually gives an embodiment where they talk about any number of bit lines might be used yes I'm trying to put my fingers on it let's see we cite it in our reply brief let's see I think the best thing I'm going to have to do is I need the video thank you you said it's in your reply brief yes it's in the oh ok the specification of the it's at page 24 of the reply brief in Harari v. Lee it says the possible embodiments of the 544 specification do not limit the claim language accessing a number of control gates and accessing bit lines simultaneously the specification of the 544 reveals that show me column and line ok column 4 it's in the appendix at A664 column 4 lines 64-67 where it says in another embodiment 48 or any other number of control gates which is less than all control gates in the array are accessed which accesses a reduced number of memory cells this embodiment may require less current so by reducing it to one bit line for example the minimum amount of current would be required or they could have more bit lines but this doesn't say multiple bit lines control gates could there are multiple control gates but the bit lines the bit lines are the control gates the bit lines are the control gates yes no the bit lines are the digit lines sir look on column 4 line 63 it talks about the first digit line is accessed to activate memory cells in the array in another embodiment 48 and other number of control gates which is less than all control gates in the array are accessed you're saying that the words control gate and digit line are interchangeable here because I understood them to be discreetly different well that's my understanding alright how about let's look at column 3 look at column 3 line 45 ok I have to get to I have to get to the appendix 664 664 council when you're doing that to follow up on my point let me let you answer the question first though because there's a sentence that clearly shows the digit line and control gates are two different things ok I'm sorry which what part were you directing me to your honor column ok column 3 there's two points here actually I think maybe it also addresses Judge Moore's point let's start actually up at line 37 for example 4 control gates or 8 control gates could be accessed then the digit line is accessed to determine if any of the 8 activated cells are over erased that would seem to be two separate steps digit line and control gates not being the same are you saying that's not true that distinction is drawn throughout the next 2 paragraphs at least 5 times I would have to read it more carefully if I misspoke then I misspoke alright so let's go back to column 3 then starting at line 42 the flowchart showing figure 4 see where that sentence begins you're talking at you're referring to figure 4 yes column 3 line 42 yes that last sentence reference to one digit line is that not the kind of reference to a single digit line that would differentiate this case from the standard rule that says a or and to be interpreted as plural no because it's making the error of taking limitations in the specification and reading them into the claim and the claim doesn't have that limitation if the claim itself had something within the claim that said it has to be in essence has to be a single digit line that would be different but the claim doesn't say that let's look at the claim language it says a digit line well that exact same limitation talks about a number of control points and said number of memory cells so the claim drafter clearly understood what he wanted to talk about more than one he could say a number of and contrast that with the use of a digit line why isn't that the sort of indicia in the claim itself that suggests that the word a digit line really means a single digit line especially taken in the context of what Judge O'Malley points out which is every disclosure in this spec discloses a single digit line and only one digit line doing it because I'm going to flip that around and I would say I'm not asking a question but the question is why didn't the person drafting this claim say a single digit line if they meant a single digit line they could have said a single digit line they could have very narrowly construed that what they're trying to do now is what Lee is trying to do right now is to having drafted a claim that's a little vague and a little broad so as to make sure that they would cover things that may not use a single digit line they're now trying to say that is really just a single digit line to get around the problem they have in this interference and so it's not a matter of why would they have said a number of memory cells, why didn't they say of a single digit line and that was their mistake as they point out drafting a patent application particularly drafting the claims is an exacting art and they didn't use that exacting art here or maybe they did because they wanted to make sure that the claim was sufficiently ambiguous that they could cover something that doesn't use a single bit line and they need to be held accountable for the way that they draft their claims doesn't the board's rules say that the board is to give the broadest possible construction? I understand that but it also says broadest possible construction in light of the specification and in its own rules cites Phillips so we can't ignore this fact in interpreting what's a reasonable interpretation well but the claim language itself is clear and if it's clear and unless there's a definition of what that means within the specification it may provide guidance to interpret the context of the claim but you can't take a limitation from the specification or a particular embodiment and move that characteristic of the embodiment into the claims in order to limit the claims. You look at the claims first and the claim language first unless it's ambiguous which it isn't it's quite clear here then the specification is just a context. What is quite clear this says a digit line thereby activating said number of memory cells so why doesn't that require a single digit line just one that says a digit line to activate a number of memory cells that one line has to activate more than one memory cell but it doesn't say it has to be all at once and you could do one digit line now and the next digit line then and the next digit line then but that wouldn't be a single digit line that would be a digit line activating a number of cells in Harari a digit line there a bit line activates a single cell. It doesn't activate a number of cells so it requires activating multiple digit lines to activate a number of cells but Lee in contrast says and by the way this is the only thing disclosed a digit line always activates a number of memory cells. Well that is the embodiment they showed but if they drafted broader language to encompass the possibility that you could have a digit line activating at one moment one memory cell and then another digit line at another moment activating another memory cell then you've got a number of memory cells or simultaneously I think that would leave them open to written description problems if we were to construe this claim as broadly as the board did and as you're requesting because they don't have an embodiment that shows how you would have a single digit line doing one and then sequentially a different digit line doing others so I mean you're asking for a construction that would tend towards leaving these claims invalid Well that issue was not up by the board it's not considered maybe that's a different issue it needs to be considered but what I think is that when they say a digit line then they have they do have a disclosure which supports a digit line without having to say a single digit line if they meant a single digit line they had to say a single digit line and they didn't Mr. Verywell you're in to your rebuttal Thank you very much Good morning Good morning May it please the court In these two appeals there are three issues that the court needs to consider I'll briefly frame each of the issues a couple of which were just touched upon and then go into more detail about each of the three The first issue is common to both interferences This issue relates to the incorporation by reference of the 579 application into the 398 application The board appropriately found that this was a specific incorporation of only the optimized erase and optimized write features The board also appropriately determined that the incorporation If the only sentence in the patent had been the first one which is quite broad and the second one wasn't there to suggest the first one might be narrower Would you be standing here giving us the same argument If the only sentence were that first sentence I would your honor because it's not just that first sentence I would actually direct the court to consider the entirety of that paragraph and this can be found in the Lee appendix at 269 and I'm directing you again to the 398 application At this point and the paragraph begins at sentence 23 We are discussing the erase operation of the 398 application This paragraph then says optimized erase implementations have been disclosed in two co-pending applications The next sentence is this incorporation and it says these are the disclosures of the two applications are hereby incorporated by reference So this one sentence that your honor has asked me to focus on refers to the disclosures which were in the previous sentence just identified as the optimized erase implementations How is that different from ultradent? That is different from ultradent for a couple of reasons First again I would say that we are solely focused at this point on the optimized erase whereas in ultradent it was the discussion of the Rosenthal patent went throughout an entire column of the Monroe patent and there were several different features that were identified with respect to the Rosenthal patent that were important to the Monroe disclosure Here we're focused solely on one feature the optimized erase I would say that the wording is also different because there they said that the patent was incorporated Here they've said the disclosures and again as I just went through the disclosures refers to the previous sentence where they've said that it's the optimized erase disclosure and then the third and I would point again to Judge Morrison It doesn't say these particular disclosures it says the disclosures of the application are incorporated. It doesn't limit them in that sense I would suggest that the context does though because the previous sentence just went through and said this is the disclosure I'm talking about Optimized erase is disclosed in these two targets It is that disclosure then that they're incorporating Just turning the tables on you in terms of the disclosure, it's certainly the second incorporation paragraph demonstrates that these parties knew if they were just including portions rather than the entirety of the disclosure they knew how to say that That's precisely what they said in the second incorporation, right? They said relevant You're suggesting that we read in, in essence, the word relevant into the first sentence, right? I am, but I think that in the context that it's appropriate and I would also point out that the second incorporation would not be necessary at all if the first incorporation had been a general incorporation Don't patent applicants tend to be belt and suspenders kind of people I mean, they're going to be extra careful Should we assume that it necessarily had any meaning other than particular caution? Well, I think that we should given that this court's precedent has said that with respect to incorporation that you need to point out with detailed particularity the specific matter that you're discussing And so I think that it does make sense that you interpret this first one to be they're pointing you to optimized erase They're saying it's disclosed in these two applications They then incorporate that disclosure and they then if you continue reading that paragraph they actually then summarize exactly what the board found to be the incorporated material There's one case that uses that language but that language wasn't critical for the holding in that case We've got Ultradet and now we've got Homer that appears to be much broader statements. In other words, as long as a reasonable examiner can understand what it is that someone's trying to put into the record, we should assume it's in there Well, I would actually suggest that this statement came from Xenon Environmental and it was a critical issue there in terms of whether or not specific subject matter had been continuously disclosed, so it was a necessary part of the holding And that is where this court has said that patent draftsmanship is an exacting art and that we have to provide this type of specific disclosure in terms of what we're attempting to incorporate So as I understand it, your argument is that optimized write and optimized erase are the only things incorporated by reference, is that right? That's correct. But how does that not encapsulate everything in this disclosure? I don't see anything in the disclosure that isn't relevant to the optimization of writing or the optimization of erasing. Well, I would suggest again that going back to this court's precedent, we need to be looking for the specific detailed material that they've said that they've incorporated. And going back to the contextual framework of the 398 application, I think that the 398 itself summarizes what is the specific material that's incorporated Just following the sentence where it says that these disclosures are incorporated, it then explains in two sentences exactly what this disclosure is Again, 269 for the optimized erase And that disclosure is exactly as the board found It is this reiterative process of applying a pulse of erasing voltage followed by a read to determine if the cells are in the erased state Wait, I'm confused. Optimized erase implementations have been disclosed These disclosures of the two applications are hereby incorporated. Now you're saying it's something less than the optimized erase disclosure? It's only a precise and specific portion of the optimized erase disclosure that's incorporated by reference? No, I'm suggesting that these next two sentences summarize what that optimized erase implementation is Really? Because I don't see anything in the next two sentences that refer back to this is the portion of the prior application that we're incorporating by reference. Rather, I just see them continue on to discuss a portion of the optimized erase procedure I don't know why this should be characterized, these two sentences are meant, or we should accept them as characterizations of the only things incorporated by reference in these applications. I think again that they are summarizing what it is, and it's hard to say because the 579 How do you get that they're summarizing it? I don't see the sentence as suggesting that it's even summarizing the disclosure of what was incorporated by reference. Yes, it's in the same paragraph and English would suggest it's all related, but I don't see that that's necessarily a statement that explains this is what is incorporated by reference. I suppose that I get that then from looking to the 579 application which again does not use the term optimized erase but it does have a disclosure that fully tracks these next three sentences that I submit to you are a summary of that optimized erase functionality. Now if we disagree with you on the disclosure piece, you still prevail on other theories, am I right on that? That's correct, and that would turn us to the second issue which is the A bitline argument, and for the Lee interference that would be determinative and would require this  in the Lee interference. So two wrongs do make the right by the way. Well this would actually be the third since Homer was already a third time's a charm, right? But the court found as we previously discussed, the court disagreed with us and found that A bitline should be interpreted to mean one or more bitlines. We submit that there were two legal errors in that holding. The first which is what we've discussed relates to the fact that we need to be looking to Lee's intrinsic record rather than Harari's in interpreting this claim term. That was part of the holding in Agilent Technologies. The second thing that also comes from Agilent Technologies is that we should not be applying the broadest reasonable interpretation as Judge O'Malley suggested. That is typically the procedure in the board, but Agilent said that in the context of patent interferences where you've copied claims from an existing patent that cannot be changed, Lee would not have the ability to change its patent claims during this interference proceeding. So in this context, we need to apply the plain and ordinary meaning of those claim terms. As I think Your Honors have pointed out Doesn't our law say though that the plain and ordinary meaning of those terms is presumptively plural and that there has to be a lot to overcome that presumption, even if you were using an infringement burden of proof rather than the normal burden that is applied at the board. That's correct. This Court has referred to that as a general rule, although it has found in certain circumstances that there are exceptions to the general rule. And I would submit that this is precisely the type of case where that exception should apply. And the two things in particular that I'd like to point your attention to are the context of the claim, the claim language itself, and then second the specification. So turning... You concede that this patent itself is limited to a single bit line? Yes. The 454 patent the claim should be properly interpreted as limited to one and only one bit line. Okay. So turning to the claim language and this can be found, I think if you were still there in the appendix or at page 11 of our e-response brief we talked about claim limitation A, which clearly distinguishes a number of control gates from a bit line and a number of memory cells. This is also carried through though in the next claim limitation which I think is very important where it says subsequent to accessing said bit line, again implying the one bit line, sensing the presence of at least one over erased activated cell. At least one is exactly how the board interpreted a bit line. So clearly this shows a distinction between plural elements, at least one elements and then singular elements. As your honors went through with Mr. Birdwell the 454 patent specification is similarly consistently clear. Every embodiment in the 454 patent discloses accessing a number of at least one and only one bit line. And in fact there are disclosed advantages to this that can only be achieved by testing and healing cells along a bit line one at a time. For these reasons and as explained more fully in our brief, we submit that a bit line should be construed as only one bit line. What about MNEA and the board's analysis of MNEA? So turning to the MNEA interference and here again even if this court finds that the incorporation by reference of the 579 application was in its entirety, this court can still affirm the decision of the board with respect to the offset erase verified bias claims. The board specifically found that even if there was an entire incorporation that this feature, the offset erase verified bias still lacked written description in Harari's specification. The board's decision was premised primarily on two pieces of evidence. The first being the language of the 579 application itself. So the board said, but just to understand, the board's analysis of Harari was that Harari only biasing on Harari does not apply to erase verified? Am I right about that? That's correct. And you think that's correct? Yes. What about, let's just turn straight to it. I'm looking at the Lee appendix if that helps you, page JA 345. It just seems to me that the board missed a critical piece of disclosure that would suggest the board has this part wrong. JA 345 in Lee and in particular on that line 28. The read circuits in operation described are also employed in the programming and erasing of the memory cells particularly in the verifying part of the operation. I think it's a clear disclosure. I just think the board, and the board doesn't cite it. It's not that the board addresses it and says this doesn't apply because they just seem to have missed it entirely, but doesn't it fully suggest that this is part of it? I think your Honor is right that this is not what the board had focused upon, but I think that what this does say is, and we're not disputing the fact that during this offset process it will use the same circuits that are used for the read procedure, and it will also these procedures will also use in terms of the word operation some of the same programming application voltages, for example. Just to be clear, the read circuits in operation described well, the biasing is described immediately in the preceding paragraph. Master reference cells are biased to equalize the current. See the sentence right there? I do. So the biasing is disclosed in the preceding paragraph, and in the very next paragraph the topic sentence says the read circuits in operation described are also employed in the erasing. How is that not a suggestion that that very adjusting bias is also used in erasing not just reading? Well, I would suggest that you'd have to go back to the entirety of this passage, where Harari makes a clear distinction between using the specific offset bias or using these local reference cells directly on the one hand, where he says you can use the local reference cells directly to read out the threshold voltages and in that context he says you can do it in read or program erase verify. However, he then refers to an alternative embodiment, where he says you can use these reference cells indirectly, and in that context he only says that you use them to read. It is only in that alternative embodiment that the offset bias adjustment is taught. But the Board's decision was really broad. I mean, the Board just said there's just nothing in the entire specification that puts the two together, didn't it? That's correct, and I think that that's appropriate. I mean, given again that this is an issue of incorporation by reference, and we're talking about claims that have several steps, what Harari has done and what he's done throughout this interference process is try to piece together unrelated portions of the specification. But if the Board says there's nothing in there that discusses A, and therefore we're going to say that A can't occur, or A's not disclosed, and your argument is, well, it does discuss A, but we've got an explanation as to why that doesn't matter, shouldn't we in those circumstances send it back to the Board and say, you should figure out whether this explanation is appropriate? Well, you could, but I would suggest that that would be Harari's burden as the patent applicant to, at the appropriate time, which was before the Board, point the Board's attention to any material that it thought suggested it had sufficient written description. Harari has never relied upon this passage to suggest that it does have support for the offset erase verify bias. Why is it Harari's burden? I mean, aren't we talking here about whether or not there's written description support in Harari? Wouldn't that be the... I guess it's an interference. Maybe that throws it off. I was thinking the PTO normally has the burden of saying there's no written description support, not the offset. That's correct, but this is an interference, and we had challenged whether or not Harari had written description for these claims specifically. So at that point, Harari does have the burden to establish. And actually, before you even instigate an interference, you're supposed to set forth a claim chart that suggests all of your written description, and this passage, again, never appeared in the claim chart, the annotated claims that Harari had submitted. Well, but Harari clearly argues that the optimized, or that the adjusting the bias applies to both reading and erasing. I mean, they've made that argument. That's correct. You're just saying they never pointed to this particular sentence. What if the sentence was crystal clear? It said adjusting bias to be clear also applies to this, and they just failed to point to it. On appeal, should we look the other way? You failed to point to that sentence, even though you made the argument. Well, I would say that although that appears to be a harsh result, that's part of what this Court's waiver jurisprudence says, that you can't raise issues for the first time and reply. You know, part of the reason is we never submitted any expert declaration as to what this does say, and whether or not this does suggest to a person of ordinary skill in the art that even though I previously told you you can only use this bias with a read, now maybe I'm suggesting that you could use it for the erase-verify also. So we just, because Harari never raised it, we never had that opportunity. Is this raising an issue, or just pointing to an additional argument in support of an issue that has been clearly raised? There's a distinction on a waiver analysis, is there not? Could you give me the distinction again, then? I'm not sure that I followed your question. You're saying that they hadn't raised the issue, but as Judge Moore points out, yes, they clearly raised the issue. You're saying that they just failed to make an argument, and that therefore that argument should be waived, even though it's within the intrinsic record that the Board was supposed to be analyzing. I suppose that's true, but I would say that we made the argument that there was no teaching of using the offset bias with the erase-verification procedure. So it was therefore Harari's burden to present the evidence so that we could at the appropriate time provide expert testimony as to what that means. The third point I'd like to raise with respect to the offset bias features is that this again should have an issue of claim construction, and that is that in light of Menea's patent, the offset erase-verify bias claims should require that this is actually an alteration of the erase-verify procedure that results in placing the memory cells into an over-erased condition. I think once again that this is clear from Menea's patent claims and Menea's patent specification. So you think that the offset bias in Menea's has to drive it to a full state? It has to drive this through a full state all the way to the over-erased. So, you know, they said that there are three states, you know, it has to go all the way through one to the over-erased. That's the way we should interpret it from a claim construction standpoint. That's correct. I think that Menea's patent makes clear that what they're doing here is something different, which is intentionally placing these cells into an over-erased condition. Harari's disclosure, on the other hand, teaches that over-erased is something that should be avoided. And in fact, in relevant part, they teach that they can use their erase state to avoid the over-erased condition. And for this additional reason, as explained in more detail on pages 41 to 43 of our brief, I would submit that Harari's claims lack support for the offset erase-verify bias claims. Well, in Harari, isn't their disclosure of the use of the offset to keep it in the same data state as opposed to the over-erased? Is that the difference? Is that, from a technical standpoint, the heart of what you think the difference is? I like to think about this, and I have a few minutes, so I'm going to go into it if I may, but I like to think about this like buckets of water, and using a faucet to fill these buckets. What Menea teaches with respect to the offset bias is that we've got a gallon of water into our bucket. There might be a line on the inside of the bucket to tell us when we've gotten there. What Menea says is, I need to make sure I've got at least a bucket. I need to go past a gallon. I need to make sure I'm over-erased. So I'm going to move that line on my bucket up, or I'm going to turn the faucet up higher than I normally would to ensure that I'm going above that line. With respect to the offset bias in Harare, he's teaching something quite different. He actually has three buckets. He has the sensing bucket, which is the memory cell that you want to read the state from. He has local reference cells, which is the second bucket, and then he has the third bucket, which is the master reference cells. The line in my example is actually a line in the master reference cells. He uses the masters to do the comparison. That's the direct measurement. But in the indirect embodiment, which is the one that has the offset, what he actually does is he's got the line in the third master bucket. And he says, well, time has gone on. Some of my water might have evaporated. The faucet may not be working as well, whatever the appropriate analogy is. But he says, we've got to look at the second bucket, which is the local reference cell. He says, we've got to look at the second bucket to see what level, how much, what volume of water is actually there. And use that to adjust the master reference cell, which has the line. So they use the offset to compare to the reference state. That's right. Not the master. That's right. And the purpose is to make sure then that when they go back to that first bucket, the sensing, that they're actually reading it correctly. To be clear, it's not your presentation that's confusing, but it is a technically difficult issue and one upon which the board has not opined, as far as I can tell. So shouldn't, even if you're right, shouldn't this be the kind of thing we vacate room in and let the board look at in the first instance? Because it seems to require a pretty sophisticated understanding of exactly what is disclosed in the two references, Minia and Harari. I would agree with that. This issue, in terms of with our appropriate claim construction, has not been addressed by the board. And part of the reason for that is that the Agilent Technologies case actually came out after we had argued at the board. So the board did not apply Agilent Technologies, did not perform any claim construction using the intrinsic record of our patents, as this court later told them that it should. So barring no further questions, we ask that this court affirm both judgments of the board. Thank you. We've got a little over five minutes remaining. Pardon? We've got some time remaining on this item. Five minutes you say? Thank you very much, Your Honor. On the issue of pointing to new grounds to support the claim construction, offset erase bias, it's just new evidence. It's not a new issue. The issue was there to begin with. And I... Why didn't you point it out when it was a critical issue? Well, I don't know. I mean, I'd have to go back and figure out the sequence. It is perhaps something that we just didn't focus on. But I'd be speculating as to why we didn't do it. But it's there. The evidence is still there. And it does support that the offset erase bias is used in the erase process. And I want to point out, there's a confusion which the... which Harari and Lee have... excuse me, Lee and Minya have inserted into this entire interference, which is that somehow the over erased situation in Harari is the same as the over erased situation in the Lee and Minya patents. And that's not so. Erased in Harari is... You're talking about the nomenclature. Right. That's right. It's a nomenclature issue. It's a nomenclature issue. So given... So given that, the... If I can call your honest attention to the offset erase bias. Here I'm talking about the offset erase bias issue. Oh. Oh. What Lee and Minya claim to be doing is purposely pushing these cells down into what they call an erased... an over erased state. And that Harari is not doing the same thing. But it's explicitly stated at page 65 of the record. This is in the 579 disclosure. In erase verify, the cell is verified with a somewhat reduced VG to put the cell well into the erased state. It's the same thing. And so they are using the process of... They are using the process of erase verify bias offset in order to help push the cells down into that... what in Harari is the erased state. What in Lee and Minya is the over erased state. Are you asking us to reach the conclusion that those two states are essentially the same or are you asking us to send this back to the board so the board can make that assessment? You should reach the conclusion that they're essentially the same because it's clear on the record that it's just a terminology issue and they're trying to take advantage of the difference in the terminology issue but the 579 disclosure clearly states what's going on. They're pushing it down into the erased state. A well into the erased state. The same thing that's going on. And then they reprogram it back into, in Harari, back into the ground state which is the lowest data state in Lee and Minya. They reprogram it back up into the what's called the erased state but that's actually the lowest data state in Minya and Lee as well. They're exactly the same process and for exactly the same purpose. On waiver, I want to point out there is a waiver here which is that Minya and Lee argued that the claims which the board did not find lack, in the Minya case, the claims which the board did not find lacked written description support. Minya argued nevertheless do lack Minya's written description support in this appeal but they did not notice that appeal that went against them at the board level and they waived the opportunity to argue that those claims do lack written description support in this appeal. The remaining thing that I would like to go back to is on the single bit line and I apologize that I misstated what I think the point is. What the 454 disclosure says, and you'll see it in our brief at page 24, our reply brief at page 24, is that you can have a waiver for the claim but fewer than you can have four, eight, or any number of control gates so that you could actually satisfy the claim by having one control gate activated with one bit line and another control gate then activated with another bit line. There is no requirement in 454 that needs to be done simultaneously in order to satisfy a number of memory devices. Thank you very much.